22, 1749 U.S. v. Seth Andrew. Thank you, Your Honor. Thank you. Okay, I think we're settled, Mr. Andrew, you can go ahead when you're ready. Thank you. May it please the Court. My name is Seth Andrew. I served my year-long sentence and remain on federal probation. While at FCI Otisville, I first read Simonelli, Prococo, and Kelly briefs. My actions cannot sustain a valid federal wire fraud conviction. I am here without counsel but not without hope. Thanks to the loved ones who are here and listening. As a pro se, I ask your permission to provide supplemental briefs and for any deference which precedent allows. I seek appellate relief primarily derived from the unanimous decision in Simonelli because from the faulty complaint to my plea waiver, my case is entirely built on an unconstitutional right to control theory of wire fraud that fundamentally charged no offense. I had trouble understanding that, Mr. Andrew, because it seems to me that the indictment charges that they had money, the victims had money in an account, and you took that money out of that account and put it under your control. But that's not what the control theory is about. This seems to me more like you're making an argument that if a pickpocket takes my wallet, he has deprived me of control of my assets. Well, yeah, in a sense, but he deprived me of the assets themselves. I no longer have the wallet, and I no longer have the contents of the wallet. So why isn't this just a straight-up theft of property that is alleged? Many reasons, Your Honor, and I'm happy to answer them. I'm happy to go with the pickpocket analogy, if you like, because in this analogy, the pickpocket was dead or the victim was dead. There is no victim, Your Honor. The entities that are described everywhere from the complaint did not exist. I beg of you, when the AUSA stands up, to ask what corporation owned the assets at the time of the transfer. And I believe that if he stands here honestly, he will tell you that there was no corporation that owned these assets. In fact, I was the sole duly appointed escrow agent for the estates of those entities. That escrow authority was never revoked, was completely appropriated to me to determine upon the demise of the corporation what would happen. That is not a pickpocket, Your Honor. That is a fiduciary obligation I had, and I carried out under the guidance of the authorizer, the State of New York, the lawyers, and the accountants. There was no intent. So a pickpocket does that with malice and intent of forethought to take property. I did none of the above. So it is nothing like the analogy you just described. Okay, but then that's very helpful. So what the victim that they chose- Excuse me. Sure. That's very helpful to me in understanding your argument. I'm not sure what it has to do with Ciminelli, which is a separate- I'll explain clearly. But it seems to me that what you're just saying is there was no theft because you had a right to that property. I had a right to the property and to control the information about the property. What the AOSA made faulty on plain error, and not harmless error, plain error that meets all of the standards of plain error, is that what they did was decide that a victim with no right under any law, state or federal, to that property, would be decided to be a victim. An independent contractor, a nonprofit 50C3 that I also founded, called Democracy Prep Public Schools. And I will acknowledge, Your Honor, I did a bad job in the naming conventions of the many nonprofits I founded to serve low-income students. They all started with phrases like Democracy Prep. They were separate legal corporations with individual standing, different corporation boards, trustees, rules and governance. Three of them dissolved. And in so doing, I had the corporate responsibility to manage the final assets and escrow entities that were in the corporation assets remaining. The entity that they chose to give status as a victim, falsely, erroneously, and unjustly, was the entity called DPPS. And that is one of the most manifest unjust elements of this case. By doing so, by giving the wrong victim, the mistaken identity, to a victim that was not a victim, that had no intent to that, is because of right to control. That victim had no right to the assets. But what they believed they had was the right to control the economic information about where those assets would go. I thought your point was there's no they. The corporations that were dissolved, there's no they. So the entity that was the independent management organization believed they had the economic information and a right to where those assets would go. I believed they did not. And so there was a question about the information and whether I had to somehow consult with the independent management organization about where those assets would go. The information about where the assets. DPPS never, in the documents that I see, claimed that they were their assets initially, or that they should have been their assets to begin with. Because by law, they may not be under New York State charter law, under federal law. They were a non-profit that signs a 990 federal tax form every year, requiring them to be an independent entity that does not own the assets of the dissolved corporations. And so there are five things on the record that I just want to say quickly, Your Honor. The escrow accounts belong to those dissolved corporate entities. I was the duly authorized and sole escrow agent for those accounts. No victim lost any money or property. So it is not a property crime duly noted under Simonelli, Prococo, Kelly, or others. I did not financially benefit requirement for a property crime in any way, or have the objective to deceive or any pecuniary gain, which both the judge and the AOSA concede. And most importantly, Your Honor, I acted in good faith. I did everything from the beginning to the end of this case with the intent of the low-income students that I served, founded the entities for, and the unfathomable argument that the government presented when they put me in handcuffs at 6 a.m. was that somehow I did this for a false claim of a mortgage benefit. And the reason that I'm so adamantly upset about this is because only because of the deprivation of my due process rights, when they never provided Brady information, until 16 months after my arrest and after my plea, that proved uncontrovertibly that I did not receive any individual pecuniary gain, even collaterally. And only after the plea that we crafted very carefully, to be honest, I stood in court under oath and said everything that I believe today. I regret my actions. I transferred funds. I did not receive written authorization from Democracy Prep Public Schools because they had no authorization to give. They were not the entity in control of those accounts, and they had no legal authority to do so. And so those five facts, Your Honor, make this case a right-to-control case of property fraud, and I elocuted to a right-to-control elocution. My counsel and I sat together and drafted an elocution based on what the Second Circuit, at the time in 2021, believed might be the intangible right to control an economic asset. Because it is true that I did not consult DPPS with whether I put this money at Bank A or Bank B, or whether I put this money in a CD or in a checking account. That is true. And I elocuted to that fact, and I would stand here today again and say that. And the reason that I deprived them of that economic information is because I believe they had no right to it. And so my denial of that for them was important because I thought that that economic information was mine and they thought it was theirs. So because this USA threatened me and my family with 60 years in federal prison, a veritable life sentence for a 40-year-old, I decided to plead to this economic crime that is now, after Simonelli, clearly 9-0, not a crime. So I committed the actions I elocuted to, but those actions, Your Honor, were never a crime. Not then and not now. So one of the pieces of the elocution that I think is important here that I didn't hear, you talked about moving the money, but when asked whether you had authorization and whether you knew you didn't have authorization when you moved the money and you said... I do not. What I said, and I said very consciously... You said yes, you knew you didn't have, I mean, you affirmed that you didn't have... ...current authorization. And the distinction that my lawyer and I worked on and that I said explicitly in court, even when pressed by the judge, was the following. The entities existed and gave me full authorization for using the funds upon their demise. And they could not give me current authorization because after their demise, there's no board. There's my sole authorization power. I walked into the bank. I told the bankers this. There was no intent to deceive. There are emails that are full on the record in the Brady material that he withheld for 16 months, intentionally and against my Due Process Act violations. I was not presented at presentment. The judge did not provide the DPPA requirement that he be warned about the Brady violations that he later committed. But instead, those Brady materials, including the FBI letter that said the FBI made a mistake, the letter from the boards of those entities and the former board members of those entities that said that they had given me this authorization, and the financial documents, over 1,000 pages, that said I never received financial benefit from this. All of those facts were in the Brady materials that later were released, but only after my plea allocution to a right to control fraud of economic information. And so when I made that plea to spare my family of a 60-year potential prison sentence because the Second Circuit at the time held that controlling economic information might be a crime. The indictment charged that you stole approximately $218,000 belonging to charter schools. Correct. Well, first, there was no indictment. There was only a complaint. I spent nine months. I was never indicted. The information. No, the information is something that I had to consent to only after nine months of being held without a grand jury, without the constitutional right to a grand jury. So nine months went by without this Brady material being released. Brady material is not our story here, right? The story is whether there's a right to control theory or something else. Correct. So I did not have access. Excuse me. The information to which you pled guilty charged that you stole $218,000 belonging to charter schools. And those words are patently false. Here's what I ask you to do. When the government stands up. But if they're patently false, you pled guilty to violating, to committing that crime that is charged in the information. What I agreed to commit, to plead guilty to was 1343. Not a theory, but I plead guilty to 1343 because at the time, not post-Simonelli, but pre-Simonelli, there was a theory presented by the government that withholding economic information might be a crime. And at the time, I certainly did not steal any funds because the funds never were in my account. I never took a penny. In fact, at the day of my arrest, sat in escrow with interest in full. Well, wait. Come on. If I go into somebody else's bank account and I take the money out and I put it in another bank account in a corporate name, the fact that it's not the account I put it into is not my name does not absolve me of stealing the money. But it's not stealing, sir, if the first account is dead and the second account, you were authorized and given the specific instructions from the state of New York to do so, so that the first account didn't lose the money. When it says of charter schools, it is just a factual, plain error, gross error. Those charter schools did not exist. The number of times from the complaint to the final reply brief that the government makes error of fact in the description of what these entities are. You're saying that in your head, you thought you were pleading guilty to a right to control theory. A hundred percent. That's the only thing I was even willing to consider pleading guilty to. And at the time, that was the only way I could possibly stand in court under oath as I am today and plead guilty to something, my actions that I regret because they've caused my harm in the schools that I love, a great deal of emotional and painful harm, reputational harm. Those are not property crimes. So just to be clear, sir, what you would ask us for relief if you had your way would be to vacate the judgment. With prejudice. Well, that's what I'm asking. Vacate your guilty plea, which normally that means that we start over and the government can then take the case to the grand jury, indict you on whatever charges they think are appropriate. You understand that that's the ordinary relief provided when someone seeks to vacate their guilty plea? I do, Your Honor. And that's why I'm asking for you to vacate my conviction with prejudice, because I do worry sincerely as the pattern. Under what authority, though? Your authority. And I'm not a lawyer, so I can't give you that. It's just our inherent authority to just to say that because because that's the relief. The relief is, Your Honors, I wrongly pled guilty under a theory that was that was accurate at the time and valid at the time. Under existing precedent, we now know that the theory under which I pled guilty is not valid. So we have to have a do over. That's what we do in this court, really, is we give do overs. That's your so your victory here, if you were to win, would be vacation of your guilty plea. And the government having the opportunity, I think, to to reassert charges. I recognize that that is a risk. My wife is most scared about that. My family is most scared about that, given that I've already served my prison sentence. I've already had three and a half years under government control. I'm already branded a felon. They've already released three press releases that have described my reputation. I'm asking that question. So that is the difference that you're saying that that we should. I am. But the reason I'm asking, you're well over your time. I just want to make sure that I understood the relief you were seeking because it wasn't clear from your brief to me that what you're seeking is not just that we vacate the plea in the judgment, but that we prohibit the government from reinstating the charges. I'm sorry to tag on that because I think I got your answer to this. But if you had the clear choice between staying where you are or having your conviction and your plea, your conviction vacated, your plea withdrawn and the government gets to move forward with whatever charges and what you would still like us to do that. Your Honor, this is a very hard question for my family, but I'm a middle school civics teacher. I'm a public servant who spent his whole life believing in a justice and the law. But the question is yes or no. It's yes. And the answer is yes. Because I think a great injustice was done here. And I'd rather see a court, even now that I know how to do it pro se, then I would see the injustice that was done to me and my family. And the main reason is this. I've now seen the thousand pages of Brady material. I now know what would be in a deposition. I've now spoken to the individuals who would say I was authorized to those individuals. I think we take your point. If there's nothing further, we'll hear from Mr. Finkel. Good afternoon. May please the court. My name is Ryan Finkel. I'm an assistant United States attorney in the Southern District of New York. I represent the government here on appeal, as I did in the district court proceedings below. The narrow issue that's left before this court is whether Simonelli in some way gives the defendant an ability to vacate his guilty plea. It does not. And the reason why is because Simonelli doesn't abrogate the wire fraud statute. It merely clarified what the word property means in Section 1343, the Wire Fraud Act. And Seth Andrews' crime targeted money, specifically $218,005 that belonged to Democracy Prep. There was a victim in this case. The victim provided a victim statement, which the judge considered at sentencing, which was part of the docket. The victim said that they were injured. I'm sorry, Your Honor. You see the victim. So help us hear your perspective on this. While they were dissolved, they didn't even exist as a corporation. Who was the victim here? The victim here was Democracy Prep Public Schools. I'm not familiar with the machinations of whether there are sub-entities among that umbrella. But Democracy Prep Public Schools was injured. And it existed at the time? It exists today, is my understanding. It certainly existed at the time of his plea. It certainly existed at the time of the actions which he undertook, which were a series of actions that took place over approximately one year. He didn't just take money from one school. He took money from three different schools that were part of the Democracy Prep network. He made two different trips to a bank, multiple deposits, multiple transactions that Judge Cronin found were designed to conceal his activity, which is to say money laundering activity, which is a charge that was in the complaint, but which the government agreed to drop in connection with his plea that lowered his guidelines. There were a lot of benefits he got also in forfeiture and restitution. So there was a victim. And Mr. Andrews' point, I think in a large part, is just hanging on to this word control and trying to make it something that it is not. And he relies in part on the complaint and what's in the complaint. The language that Your Honor quoted from the information, which he waived his right to have filed against him, is mirrored in the complaint. This is docket one at the district court. And I'm reading the two-wit clause for count one wire fraud in the complaint, which of course was not the operative charging document that's before this court. But I think it does pertain to what Mr. Andrew knew and understood. Two-wit, Andrews stole approximately $218,005 belonging to charter schools. And in connection therewith and in furtherance thereof, Andrew transmitted and caused to be transmitted over interstate wires, emails necessary to implement his scheme. Wire fraud, classic wire fraud. And what he's saying to this court today and in his briefing is flatly contradicted to what he told Judge Cronin in a very different context when his incentive structure was quite different. At sentencing, when his incentives were to be contrite and remorseful, he said to the court's question about whether there is a victim here, I want to be unequivocal, his words, I am solely accountable for the decision to transfer the funds the government identified. I wish every single day that I had not done so. My actions caused harm to democracy prep public schools in ways that I deeply regret. What were those actions? The transfer of funds. The movement of money. Money was the target of his scheme. Money was why he told lies over email, through wires, to take that money. And it hurt the victim. That sentiment is also mirrored in the plea as well as the information. And for those reasons, unless the court has any additional questions. And I didn't see anything in the plea transcript in which Mr. Andrew or anyone else made an argument or a reference to the existence or nonexistence of a corporate party who may have been entitled to control that money or to own that money. That's correct. And my understanding of the facts here today and certainly when I prosecuted this case and that those arguments are not arguments. Democracy Prep Public Schools, the victim in the case, was injured. They were the ones who were entitled to the money. And even accepting arguendo, some of the assertions that Mr. Andrew has made here today. If the money was the remnants of some dissolved or dying entity, there would be a process for distributing those assets. Mr. Andrew is not able to come in, take that money, by telling lies, by the way, but put that aside. Come in, take that $218,000, and then use it as he sees fit to benefit his own pet project company. So all of these arguments don't really make sense. And at its core, this is a really straightforward, simple case. And the only question really before this court is was the target, based on the plea allocution, based on all the materials before the district court, was it plain error for the district court to accept that the target of the fraud was money? And the answer to that question, of course, is no, it wasn't, because it was. Okay. Thank you. Thanks. Mr. Andrew, you have reserved three minutes. The lies continue. DPPS was never a recognizable legal victim withstanding in any form over these accounts. And to say the words democracy prep, that is not a legal entity. It is a phrase I copyrighted in 2001. It is not a legal entity. And to say he doesn't know the machinations of the corporate structure, that is the job of the AUSA and the district attorney's office. And it is unbelievable that he would say that still this phase later. I think the broader point is if an entity does become defunct, there's a process whereby its assets are distributed.  And under the state of New York, under the federal IRS guidelines, nonprofit allocation goes to the executor of its will, and the executor determines that I was the executor. I was named the executor. I was authorized as the executor of this will. I was statutory. What do you say is the will? The individuals on the board of trustees gave me the authority to handle the dissolution account that was established at the time of creation of these entities, which I created. And it is most clear that he just told you a falsehood again. Look at page 25 in the plea transcript, Your Honor, where I asked against my counsel's preference to please clarify the victim for me, Mr. AUSA. I said, quote, Your Honor, when we're referring to the victim, who are we speaking of, please? I begged him to make this clarification at plea before the plea was finalized. This AUSA refused to answer. He did not answer who the victim was because he knew that DPPS had no cognizable legal right to the funds. And so you can't steal a property. You can't take property if you don't own property. DPPS had no property. They thought they had information rights, but information rights are not property any longer. And so my stealing charter school funds is not what I did. What I did was protect them. There was a political fight going on between these entities. I was on one side. The board chair was on one side. This is all on the record. I wrote a rough e-mail. They wrote rough e-mails back. They ignored me. I whistle blew on them. It was not necessarily pretty. And the judge recognizes this. But having a political fight is what Kelly is about, is what Skilling is about, is what Cleveland is about. It's what all of these cases are about, that just because the actions are political or unpleasant does not make them a property crime. Just because I made a decision to move funds from a dissolved entity into the entity and kept them, to be clear, in escrow for the benefit, and to your point, the process was to put it into a benefit of another nonprofit, not just a corporation that I controlled, but a board of trustees of a nonprofit entity for the benefit of the alumni of Democracy Prep Charter, Democracy Prep Harlem, and Democracy Prep Endurance. And I only made those transfers. Did it make it sound nefarious and like I did terrible things by walking across the street to deposit the check? No. I did that because I wanted to open the account that was going to help keep those accounts from being lost to the state of New York's lost money fund because the funds had gone dormant. The bank called me as the sole signer at the bank, and I wrote an e-mail to the bank saying these are not my personal funds. They are the funds of the dormant escrow account of the dissolved charter school. And the banker, and this is all in the Brady material as well, said, are these yours for the purposes of a mortgage? And I said, no, these are not my personal funds. There were no lies. There was no intent to deceive. There was no evil intent. I've spent 20 years. This is not a wire fraud case. You could read this in the transcript of sentencing of somebody who is trying to line their own pockets. In fact, the AUSA's only kind words for me ever have been by acknowledging that I was not a typical fraudster who tried to go on vacation or tried to make a single penny off of any of this. In fact, my wife and I donated over a half million dollars to these projects. What we were trying to do is to save the money for low-income children from loss because the Democracy Prep Public Schools nonprofit board of trustees was failing. And I tried to save those $218,000 because the state of New York had said to me, the regulators and the authorizers had said, if you don't do this job, escrow agent, they will be given back to the lost money fund. And so I had to do this. I had an obligation to act as escrow agent. And as I think you know, your honors, that the good faith in U.S. and Braunston, the good faith act is its complete defense against the idea that this would be a property crime and a wire fraud crime. I think we take your argument. Thank you very much for listening. I appreciate you all so much. Thank you. Thank you.